UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

TIME'S UP, INC.,

                                   Plaintiff,

            -against-                      07-CV-9557 (PAC)

THE CITY OF NEW YORK, COMMISSIONER OF THE
CITY POLICE DEPARTMENT RAY KELLY, OFFICER
CAROLYN FANALE, OFFICER STEVEN BOBBETT,
OFFICER LUIS MORTIMER, DEPUTY INSPECTOR
THOMAS GRAHAM, and APPROXIMATELY 34
OTHER UNIDENTIFIED NEW YORK CITY POLICE
OFFICERS,

                                   Defendants.

------------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS THE COMPLAINT, WITH PREJUDICE, PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Defendant*
100 Church Street
New York, New York 10007
(212) 788-1599


Of Counsel:

Arthur G. Larkin

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT ..........................................................................................................2

    I.      Governing Standards...............................................................................2

    II.     Time's Up Cannot Seek Relief on Behalf of its Members ...........................................................................................5

    III.    To the Extent Time's Up Sues on Behalf of its Members' Rights to Association or Seeks Relief in its own Behalf, Time's Up Cannot State a Claim and, Therefore, Dismissal is Appropriate .....................................7

         A.    Times' Up Could Have Been Lawfully Searched Without a Warrant on OCT. 29-30, 2004 ....................................................................................9

         B.    Officers Could Have Entered Time's Up In Order to Enforce City Building Codes ...............................................16

         C.    Officers' Allegedly Blocking the Entrance to Time's Up Cannot be Shown to Have Caused Injury to Time's Up .......................................................................18

         D.    Time's Up's Remaining Allegations do not State a Cause of Action...................................................................19

CONCLUSION......................................................................................................21

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                          <u>**Pages**</u>

<u>Aguayo v. Richardson</u>,
    473 F.2d 1090 (2d Cir.)
    <u>cert. denied</u>, 414 U.S. 1146 (1974) ..................................................................5, 7

<u>Alford v. city of New York, et al</u>,
    06-CV-3512 (PAC) ...........................................................1, 10, 11, 12, 15, 16, 17

<u>Amron v. Morgan Stanley Investment Advisors Inc.</u>,
    464 F.3d 338 (2d Cir. 2006) .........................................................................3

<u>Amsterdam Garage v. Department of Consumer Affairs</u>,
    139 Misc. 2d 799, 529 N.Y.S.2d 243 (Sup. Ct. N.Y. County 1988),
    <u>aff'd</u>, 157 A.D.2d 460 (1st Dept.) ................................................................16

<u>Annis v. County of Westchester</u>,
    136 F.3d 239 (2d Cir. 1998) ........................................................................18

<u>Barnes v. Anderson</u>,
    202 F.3d 150 (2d Cir. 1999) .....................................................................18, 19

<u>Bell Atlantic v. Twombly</u>,
    -- U.S. -- 127 S. Ct. 1955 (2007) ...............................................................2, 3

<u>Chambers v. Time Warner, Inc.</u>,
    282 F.3d 147 (2d Cir. 2002).................................................................3, 4, 10, 11

<u>City of New York v. Time's Up, et al.</u>,
    2005-CV-400891 ..................................................................................20

<u>Colonnade Corp. v. United States</u>,
    397 U.S. 72 (1970)...................................................................................13

<u>Conopco, Inc. v. Roll International</u>,
    231 F.3d 82 (2d Cir. 2000)..........................................................................3

<u>Cowgirl, Inc. v. Department of Consumer Affairs</u>,
    234 A.D.2d 42 (1st Dept. 1996)....................................................................15

<u>Devenpeck v. Alford</u>,
    543 U.S. 146 (2004).................................................................................17

<u>Doe v. Village of Mamaroneck</u>,
    462 F. Supp. 2d 520 (S.D.N.Y. 2006)..............................................................5

**Cases**                                                                                          **Pages**

Donovan v. Dewey,
    452 U.S. 594 (1981)...............................................................................14

In re Elevator Antitrust Litigation,
    502 F.3d 47 (2d Cir. 2007)......................................................................3

Gierlinger v. Gleason,
    160 F.3d 858 (2d Cir. 1998)...........................................................18, 19

Grandon v. Merrill Lynch & Co.,
    147 F.3d 184 (2d Cir. 1998)....................................................................2

Iqubal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)....................................................................2

Irish Lesbian and Gay Organization v. Giuliani,
    143 F.3d 638 (2d Cir. 1998)....................................................................7

Jovanovic v. City of New York,
    04-CV8437 (PAC),
    2006 U.S. Dist. LEXIS 59165 (S.D.N.Y. Aug. 17, 2006).......................3, 10, 11

Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,
    191 F.3d 229 (2d Cir. 1999),
    cert. denied, 528 U.S. 1080 (2000) .........................................................18, 19

League of Women Voters v. Nassau County Board of Supervisors,
    737 F.2d 155 (2d Cir. 1984)
    cert denied sub nom Schmertz v. Nassau County Board of Supervisors
    469 U. S. 1108 (1985)..............................................................................5, 7, 20

National Congress for Puerto Rican Rights v. City of New York,
    75 F. Supp. 2d 154 (S.D.N.Y. 1999)........................................................5

Matter of New York State Liquor Authority v. Sutton Social Club, Inc.,
    93 Misc. 2d 1024, 403 N.Y.S.2d 443 (Sup. Ct. N.Y. County 1978) ..............12, 13, 14, 16

New York v. Burger,
    482 U.S. 691 (1987).........................................................................13, 14, 15, 17, 19

Padburg v. Giuliani,
    203 F. Supp. 2d 261 (E.D.N.Y. 2003) ....................................................5

**Cases**                                                                                                    **Pages**

Paycom Billing Services v. Mastercard International, Inc.,
   467 F.3d 283 (2d Cir. 2006)..............................................................................3

People v. DeJesus,
   54 N.Y.2d 465 (1981) ...................................................................................9

Samuels v. Air Transportation Local 504,
   992 F.2d 12 (2d Cir. 1993)............................................................................3

Sheridan v. Dubow,
   92  Civ. 6024 (LJF), 1993 U.S. Dist. LEXIS 12197 (S.D.N.Y. Aug. 30, 1993) ..........4, 11

Tahira Alford v. City of New York, et al.,
   06-CV-3512 (PAC) ......................................................................................1

United States v. Ceballos,
   812 F.2d 42 (2d Cir. 1987).............................................................................7

Warth v. Seldin
   422 U.S. 490 (1975) .....................................................................................7

**Statutes**

22 N.Y.C.R.R. §§ 130-1.1, *et seq* ..............................................................................20

Fed. R. Civ. P. 12(b) ..................................................................................................11

Fed. R. Civ. P. 12(b) (1) ........................................................................................2, 7

Fed. R. Civ. P. 12 p. 12 (b) (6)..............................................................................2, 4, 16

N.Y.C. Admin. Code, § 20-359(3).....................................................................15, 16, 17, 18

N.Y.C. Admin. Code, § 20-364 .......................................................................................15

N.Y.C. Admin. Code, §27-525.1(a)..............................................................................16

N.Y.C. Admin. Code, §27-232 .......................................................................................17

N.Y. City Charter, § 435(a) .....................................................................................15, 16, 17

R.C.N.Y. § 2-202 .......................................................................................................16

Section 1983................................................................................................................5, 7, 18

**<u>Other Authorities</u>**                                                                                      **<u>Pages</u>**

Alcoholic Beverage Control Law,
§§1, et seq. (McKinney's 2007 .................................................................................9

Alcoholic Bevarage Control Law, §100 (1).............................................................9

Alcoholic Beverage Control Law, §106 (15)..................................................14, 15

**Preliminary Statement**

Time's Up, Inc. ("Time's Up"), a non-profit corporation, brings this action alleging violations of its civil rights and those of its members. The claims arise out of a "fundraiser" party held at the premises of Time's Up, located at 49 East Houston Street, on the night of Oct. 29-30, 2004, after the Critical Mass bicycle ride that took place earlier that evening. Time's Up charged an entry fee at the door and served alcoholic beverages inside the party, which resulted in a crowd control condition at the premises that required police action. Time's Up does not have a liquor or cabaret license, and does not allege the contrary in its complaint. Nevertheless, Times Up now sues for money damages, alleging injury to its First Amendment rights and impairment of its fundraising activities by reason of the police action.

The complaint is, for all intents and purposes, identical to the proposed amended complaint that was the subject of a motion to amend brought by plaintiffs in the matter <u>Tahira Alford v. City of New York, et al.</u>, 06-CV-3512 (PAC). By that motion, plaintiffs sought to add Time's Up as a plaintiff in order to litigate in <u>Alford</u> the claims that have been asserted here. The motion was denied on Oct. 22, 2007. Three days after the motion to amend was denied, Time's Up – represented by the same attorney who represents plaintiffs in <u>Alford</u> – filed the instant complaint. For the same reasons as those set forth in defendants' opposition to the <u>Alford</u> motion to amend, and as more fully argued below, the complaint (<i>see</i> DE 1) should be dismissed with prejudice.[1]

<u>First</u>, Time's Up lacks standing to assert claims on behalf of its members. The law is clear that an association may not sue under Section 1983 to recover damages on behalf of

---

[1] Defendant City of New York brings this pre-Answer motion on its own behalf only, at this time. Although plaintiff filed this action on Oct. 25, 2007, approximately three months ago, plaintiff has not yet served any of the individual defendants.

members allegedly injured by unlawful police conduct. Rather, those members' rights are personal to them, and must be asserted by them individually, in any Section 1983 action. For this reason the complaint should be dismissed under Rule 12(b)(1).

Second, to the extent Time's Up may have standing to sue for damages on its own behalf, the claims it seeks to assert should be dismissed under Rule 12(b)(6). Time's Up's claims are based on two main factual allegations: (i) that police officers illegally entered the Time's Up space without a warrant on the night of Oct. 29-30, 2004, and (ii) that officers allegedly blocked the Houston Street entrance to the premises and prevented people inside from leaving. As more fully shown below, however, accepting the allegations in the Complaint as true, (i) officers had the right to enter the premises without a warrant, as a matter of law, and (ii) the officers' allegedly blocking an entrance to Time's Up did not proximately cause injury to Time's Up such that Time's Up may sue for damages.

## Argument

### I.   Governing Standards

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to accept the material facts alleged in the complaint as true and to construe all reasonable inferences in the nonmoving party's favor. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). Nevertheless, the complaint may be dismissed pursuant to Rule 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1975 (2007). A party bringing a claim must satisfy "a flexible 'plausibility standard,' which means that a pleader must amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). A party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citation and internal quotes omitted). In order to state a claim, the factual allegations contained in the pleading "must be enough to raise a right to relief above the speculative level." *Id.* at 1965; *see also In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiffs' claims across the line from conceivable to plausible") (citation and internal quotes omitted).

Moreover, conclusory statements cannot "substitute for minimally sufficient factual allegations." *Paycom Billing Servs. v. Mastercard Intl, Inc.*, 467 F.3d 283, 289 (2d Cir. 2006); *see also Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) ( "bald assertions and conclusions of law will not suffice" to defeat a motion to dismiss). Any motion under Rule 12(b)(6) should be granted if an affirmative defense, or other reason barring relief, is apparent from the face of the complaint. *Conopco, Inc. v. Roll International*, 231 F.3d 82, 86-7 (2d Cir. 2000).

In deciding the instant motion, the Court "is not limited to the four corners of the complaint." *Jovanovic v. City of New York*, 04-CV8437 (PAC), 2006 U.S. Dist. LEXIS 59165, *13 (S.D.N.Y. Aug. 17, 2006) (Crotty, J.). Rather, the Court may also consider "documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transportation Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (internal quotes omitted). See also Jovanovic, *13-14 (on motion to dismiss, the court

may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and "documents that are in the public record, and of which judicial notice may be taken").

"When a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding a motion to dismiss without converting the proceeding to one for summary judgment." *Jovanovic*, at \*14 (citations omitted). The "determinative factor" is whether plaintiff relied on the document in preparing the complaint. *Id.* (citing *Chambers*, 282 F.3d at 153 & n.3). The court may take judicial notice of public records on which a plaintiff relies in framing his complaint – explicitly or implicitly – if the plaintiff "refers to what happened" as set forth or described on those documents. Id., \*15.

Finally, on a 12(b)(6) motion, if "matters outside the pleading" – but not otherwise "integral" to the pleading under the authorities cited above – are presented to and not excluded by the court, the Court may sua sponte convert the motion to dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(b); *Sheridan v. Dubow*, 92 Civ. 6024 (LJF), 1993 U.S. Dist. LEXIS 12197, \*2 (S.D.N.Y. Aug. 30, 1993) (converting motion to dismiss into motion for summary judgment).

As shown below, the allegations of the complaint together with other materials that are "integral" to the complaint – including statements to the CCRB made by persons identified in the complaint as witnesses to the events in question (which were submitted in opposition to plaintiffs' motion to amend in Alford, and of which this Court can take judicial notice) – demonstrate that Time's Up is not entitled to relief, as a matter of law. Accordingly, the complaint should be dismissed with prejudice.

4

**II.**     **Time's Up Cannot Seek Relief on Behalf of its Members**

        The Second Circuit "has restricted organizational standing under § 1983 by interpreting the rights it secures to be personal to those purportedly injured." *League of Women Voters v. Nassau County Board of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984), *cert. denied sub nom Schmertz v. Nassau County Board of Supervisors*, 469 U.S. 1108 (1985). "Neither the language nor the history of § 1983 suggests that an organization may sue under the Civil Rights Act for the violations of rights of its members." *Id.* (quoting *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir.), *cert. denied*, 414 U.S. 1146 (1974)).

        Since *League of Women Voters* was decided, the district courts in this circuit consistently have held that associations or organizations lack standing to assert claims under Section 1983 on behalf of their members. *See, e.g., Doe v. Village of Mamaroneck*, 462 F. Supp. 2d 520, 541 (S.D.N.Y. 2006); *Padburg v. Giuliani*, 203 F. Supp. 2d 261, 275-76 (E.D.N.Y. 2003) ("Because § 1983 creates only a personal cause of action, requiring plaintiffs to demonstrate that they personally suffer from a violation of their civil rights, an organization may not bring § 1983 claims on behalf of its injured members"); *National Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 164 (S.D.N.Y. 1999).

        *Aguayo* recognized one narrow exception to this rule, holding that an organization could sue for "an abridgment of the constitutional right of association" enjoyed by the organization and its members. *Aguayo*, 473 F.2d at 1100; *see also Padburg*, 203 F. Supp. 2d at 275 (an organization has "standing to assert a claim to vindicate its members' constitutional right of association"). As discussed in Part III, below, however, this exception is inapplicable here.

        Plainly, Time's Up seeks relief on behalf of its members or associates who it claims were injured by the police activity on Oct. 29-30, 2004. For example, Time's Up alleges as follows:

- Defendants "were responsible for the assaults, false imprisonments, physical and emotional injuries of individuals . . . [and the] unlawful assault upon, harassment of, arrest of Times Up members and associates . . . ." (Complaint, ¶ 19)

- One officer "in plain clothes forced his way into the [Time's Up] space [at 49 East Houston Street], and began hitting, pushing and striking those inside." (*Id.*, ¶ 96)

- The individuals inside Time's Up "were in fear of arrest if they exited the Time's Up space," and "were forced to wait until Civil Liberties Attorney Norman Siegel arrived on the scene at approximately 1:00 a.m." (*Id.*, ¶¶ 164-65)

Similarly, plaintiff's Seventh Cause of Action, which asserts a Fourth Amendment claim, is based on the following allegations which clearly describe injury to Time's Up members or associates: (i) "Defendants . . . used unreasonable and unwarranted force, striking, pushing and grabbing those inside with their fists, arms and bodies, causing injury to members and associates of Time's Up" (Complaint, ¶ 245); and (ii) by allegedly blocking the Houston Street entrance to Time's Up, defendants "caused fear and panic among the members and associates of Time's Up" and "caused some frightened members and associates of Time's Up to flee the premises by a back window, creating an unreasonably dangerous situation and risk of substantial harm to Time's Up, its members and associates" (*id.*, ¶¶ 247-48).

To the extent Time's Up alleges that defendants used excessive force against its unidentified "members and associates" by "striking, pushing and grabbing" them, the complaint fails to state a claim because Time's Up cannot sue on behalf of unidentified members and associates supposedly injured by defendants' use of excessive force. *See League of Women Voters*, 737 F.2d at 160. To the extent Time's Up alleges other purported injury suffered by its members, such as "fear and panic" or alleged "flee[ing] of the premises," Time's Up likewise does not have standing to seek redress for these purported injuries. The individuals who had to "flee" the premises, for example, might have standing to seek damages if they believe their

Fourth Amendment rights were violated, *see United States v. Ceballos*, 812 F.2d 42, 47 (2d Cir. 1987) ("A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave") (citation omitted), but Time's Up does not have standing to assert such claims which are personal to the individuals whose rights allegedly were violated. *League of Women Voters*, 737 F.2d at 160.

Similarly, plaintiff's Ninth Cause of Action, entitled "Claim Brought by Time's Up on Behalf of its Members (Associational Standing)," alleges that that defendants "deprived members and associates of Time's Up" of various rights including the right to free speech, the right to assemble peacefully, and to petition the government for a redress of grievances. (Complaint, ¶¶ 265-278)  Time's Up, however, lacks standing to assert any of these claims except those relating to freedom of association, *see Aguayo*, 473 F.2d at 1100, and as shown in Part III, below, those claims should be dismissed on the merits.

For these reasons, to the extent Time's Up seeks relief on behalf of its members, the complaint should be dismissed with prejudice.  *See* Fed. R. Civ. P. 12(b)(1).

III.   **To the Extent Time's Up Sues on Behalf of its Members' Rights to Association or Seeks Relief in its own Behalf, Time's Up Cannot State a Claim and, Therefore, Dismissal is Appropriate**

Time's Up has standing to sue on behalf of its members for deprivation of the right to assemble peacefully, as noted above.  Time's Up, likewise, has standing to sue for injury to itself as would any individual Section 1983 plaintiff.  *Irish Lesbian and Gay Organization v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (organization has standing "to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself might

enjoy") (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).  However, as shown below, the claims for which Time's Up has standing should be dismissed on the merits.

Plaintiff alleges, in substance, that defendants engaged in two separate acts that purportedly caused injury to Time's Up directly and/or deprived its members of the right to assemble peacefully:  (1) entering the Time's Up space without permission, a warrant or probable cause to believe that any crime was being committed inside; and (2) forming a "wall" of officers that allegedly blocked the Houston Street entrance to Time's Up and prevented people from leaving the premises.  For example, with regard to alleged unlawful entry, plaintiffs allege the following:

- Time's Up "was subjected to unlawful invasion, entry, and search of its premises in the absence of probable cause or a warrant, . . . and deprivation of its rights to expressive speech, peaceably assemble, associate with its neighbors and engage in its lawful activities." (Complaint, ¶ 2; *see id.*, ¶¶ 3, 19)

- On the night of Oct. 29-30, 2004, NYPD officers "attempted to enter the Time's Up space" without paying the required entry fee, and the officers were denied entry. (*Id.*, ¶ 95)

- Notwithstanding plaintiffs' purported denial of entry, and in the absence of "probable cause" to enter the space, "at least one officer "forced his way into the space . . . ." (*Id.*, ¶ 96)

With regard to the defendant-officers' alleged blocking of the entrance, plaintiff alleges the following:

- One officer on the scene, defendant Fanale, called a Level One mobilization that resulted in other officers' responding to the scene, who "blocked vehicular traffic on Houston Street" in front of the Time's Up space, and who "formed a wall of officers blocking the front of the Time's Up space." (*Id.*, ¶¶ 100-117)

- Officers on the scene prevented "members or guests" of Time's Up from exiting the premises until approximately 1:00 a.m., when Norman Siegel, an NYCLU attorney, arrived and "negotiate[d] the exit from the Time's Up space for those remaining inside the space at that time." (*Id.*, ¶¶ 161-68)

8

As a result of the police activity that night, Time's Up alleges that it was injured because (1) it incurred "attorney's fees, associated legal expenses and other special damages" (*id.*, ¶ 241), (2) its right to freedom of association was impaired, resulting in damage to Time's Up's reputation and goodwill, and bringing upon Time's Up "public disapprobation [and] disgrace" (*id.*, ¶¶ 259, 274), and (3) it was harmed in its fund-raising efforts that night and thereafter (*id.*, ¶ 258, 262).   None of these injuries are compensable, however, because even accepting plaintiffs' allegations as true, (1) the police were lawfully permitted to enter the Time's Up space on the night in question without probable cause or a warrant, because the undisputed facts show that Time's Up was engaged in the sale of liquor and/or the operation of a cabaret, and in either case it could be entered and searched by New York City police officers without a warrant, (2) the police could have entered the premises in order to enforce city building codes and permit requirements, and (3) the officers' conduct in allegedly blocking one entrance to Time's Up  cannot be shown to have proximately caused any injury to Time's Up directly.

A.    **Times' Up Could Have Been Lawfully Searched Without a Warrant on Oct. 29-30, 2004**

The Alcoholic Beverage Control Law governs the sale of alcoholic beverages within the State of New York.   Alcoholic Beverage Control Law, §§ 1, *et seq.* (McKinney's 2007).   *See generally People v. DeJesus*, 54 N.Y.2d 465, 469 (1981) (Alcoholic Beverage Control Law governs the sale of all alcoholic beverages and preempts any local regulation in conflict with it).   The law provides that "no person shall . . . sell at . . . retail any alcoholic beverage within the state without obtaining the appropriate license therefor required by this chapter."   Al. Bev. Cont. L., § 100(1).   It is a matter of public record that neither "Time's Up" nor anyone else with an address at 49 East Houston Street owns a liquor license or any other type

of special permit that allows the sale of alcoholic beverages on the premises.  (Larkin Dec., ¶ 3)

Plaintiffs have not alleged the contrary.

Time's Up alleges that on the night of Oct. 29, 2004, it held a Halloween party at 49 East Houston Street after the Critical Mass bicycle ride, the purpose of which was to "raise funds for the organization's activities and to increase its membership."  (Complaint, ¶ 88)  The ride began in the early evening, and participants congregated at Union Square beforehand, at approximately 6:30 p.m.  At that time, Time's Up passed out invitations to the party to many of the participants in the bike ride.  (*Id.*, ¶¶ 84, 86)  The Time's Up party "was to be the sole fundraiser, and the major source of funds for the group to finance their educational events and expressive activities, . . . ."  (*Id.*, ¶ 89)  Entry to the party "was by permission only," and "[e]ach person seeking to enter was required to make a small donation to enter the premises."  (*Id.*, ¶ 90)  "[T]hose who sought entry who were unwilling to contribute to the event's fundraising effort were denied entry," *i.e.*, anyone who refused to pay the "donation" (also alleged to be an "entry fee," *see id.*, ¶ 95) could not come inside.

It is undisputed that, despite Time's Up's failure to obtain a liquor license, Time's Up served alcoholic beverages to those who paid the "entry fee" at the door.  These facts are established by statements made under oath to the Civilian Complaint Review Board ("CCRB") by Amy Starecheski, Laura Starecheski and Mandy Hu, all of whom are specifically alleged by Time's Up to have witnessed unlawful police conduct on the night in question.  (Complaint, ¶¶ 118-28)  Defendant respectfully submits that, while the complaint does not specifically refer to the Starecheski's or Ms. Hu's CCRB statements, those statements are "integral" to the complaint because they reflect the version of events actually witnessed by those three individuals.  *See Chambers*, 282 F.3d at 152-53; *Jovanovic, supra*, at *13-14.  Moreover, these statements were

filed with the Court in the <u>Alford</u> matter, and the Court may take judicial notice of their contents. *See Jovanovic*, at *13-14.

      Amy Starecheski told the CCRB that between 9:00 p.m. and 12:00 a.m., on Oct. 29, 2004, while inside Time's Up, she consumed approximately four drinks. (Larkin Dec., Exh. A)  Her sister Laura Starecheski, likewise, told the CCRB that during those hours she consumed approximately two drinks and that she was neither drunk nor completely sober at the time she was arrested. (*Id.*, Exh. B)  Finally, Mandy Hu told the CCRB that she had consumed two drinks over the three hours she and the two Starecheski sisters were inside Time's Up.  (*Id.*, Exh. C)  All three named plaintiffs told the CCRB that there was music and dancing at the party.  (*Id.*, Exhibits A-C)

      The fact that Time's Up sold alcohol on the night in question is also established by a videotape of the inside of Time's Up that was produced by plaintiffs' counsel in the <u>Alford</u> matter.  The videotape reveals that, between approximately 11:43 and 11:45 p.m., patrons are visible inside Time's Up drinking what appear to be alcoholic beverages.  (*Id.*, ¶ 5)     The videotape is also "integral" to the complaint, and therefore should also be considered by the Court on the instant motion.  *See Chambers*, 282 F.3d at 152-53; *Jovanovic, supra*, at *13-14.[2]

      Police officers gave statements to the CCRB that corroborate the <u>Alford</u> plaintiffs' statements about drinking alcoholic beverages at the party.  Defendant Carolyn Fanale told the CCRB, and recorded in her memo book, that when she arrived at the location, she saw a large crowd of people standing outside on the sidewalk and street blocking pedestrian and vehicular traffic, and drinking alcoholic beverages from open containers.  She intended to enter

---

[2]      If the Court is not inclined to consider the statements or videotape on the instant motion, defendant submits that the Court may convert this motion into one for summary judgment, upon notice to plaintiff's counsel. Fed. R. Civ. P. 12(b); *see also Sheridan, supra*, at *2.

the premises to issue a summons to the owner for having a disorderly premise. (Larkin Dec.,
Exh. D) Officer Kenneth Gorodovich, who was the first officer to arrive at Time's Up that night
(along with his partner Randy Van Name), and who is not named as a defendant, told the CCRB
that when he arrived at approximately 11:55 p.m., he saw a crowd of 150 to 200 people blocking
East Houston Street and drinking beer and mixed drinks from open containers. (*Id.*, Exh. E)

Time's Up's allegation that it charged an "entry fee" or "small donation" in
exchange for admission to the party, and the <u>Alford</u> plaintiffs' admissions that they drank
alcoholic beverages while inside the premises (which is corroborated by the videotape and
officers' statements), establish that Time's Up violated the Alcoholic Beverage Control Law.
*See Matter of New York State Liquor Authority v. Sutton Social Club, Inc.*, 93 Misc.2d 1024, 403
N.Y.S.2d 443 (Sup. Ct. N.Y. County 1978). *Sutton* involved a purported social club that
operated between the hours of 10:30 p.m. and 4:00 a.m., which charged a "donation" at the door
and served alcoholic beverages inside. The State Liquor Authority sought an injunction barring
the club from providing alcoholic beverages to members and guests on the grounds that the club
was circumventing the license requirements of the Alcoholic Beverage Control Law.

The court held that the club was subject to the provisions of the law and could not
provide liquor without a license. Regardless of whether there was a direct connection between
the "donation" and the provision of alcoholic beverages, the facts before the court in *Sutton*
clearly showed that some portion of the "donations" went toward paying for the liquor that was
served:

> The fact alone that a nightly dues charge or admission fee is levied
> upon each member – and even upon their guests – is indicative of
> nightly expenditures and expenses which, obviously, primarily
> include the cost of liquor and other alcoholic beverages . . . . [I]t is
> clearly discernible that a good portion of that door charge, no
> matter how labeled, perforce, goes towards the purchase of

> alcoholic beverages that are provided free on the premises 'for the
> asking,' but which, in reality, are being sold to those members who
> come to the club on any particular night.

*Sutton*, 93 Misc.2d at 1027, 403 N.Y.S.2d at 445. Under the circumstances, because the club did

not have a license, the State Liquor Authority was entitled to an injunction prohibiting the sale of

alcoholic beverages at the club. *Id.* at 1027-28, 403 N.Y.S.2d at 445-46.

The facts pleaded by Time's Up and admitted by the <u>Alford</u> plaintiffs -- whose

observations of the events at issue are purportedly pleaded in the Complaint and are integral to

the action – demonstrate that, like the club in *Sutton*, Time's Up was engaged in the sale of

alcoholic beverages on Oct. 29, 2004. The sale of alcohol is a "closely regulated" industry under

longstanding U.S. Supreme Court precedent, *see New York v. Burger*, 482 U.S. 691, 700-01

(1987) (citing *Colonnade Corp. v. United States*, 397 U.S. 72, 77 (1970)), and members of that

industry can be subjected to warrantless searches by law enforcement officers consistent with the

Fourth Amendment. It is well-settled that "the owner or operator of commercial premises in a

'closely regulated' industry has a reduced expectation of privacy [such that] the . . . Fourth

Amendment standard of reasonableness for a government search . . . have lessened application in

this context." *Burger*, 482 U.S. at 702.

*Burger* involved an inspection by New York City police officers of a vehicle

dismantling business (commonly known as an automobile "junkyard"), pursuant to a statute that

required all owners of such businesses to obtain a license, and allowed such inspections without

a warrant. When the officers entered the respondent's premises, they discovered that he did not

have a license or other required business records, and that he was in possession of stolen vehicles

and parts. Respondent was charged with five counts of possession of stolen property and one

count of unregistered operation as a vehicle dismantler. He sought suppression of the evidence

found during the inspection on the grounds that the inspection violated his Fourth Amendment rights.

        The Court rejected respondent's arguments and held that warrantless inspections of closely regulated businesses are permitted as long as the inspections satisfy three criteria:  (1) there must be a "substantial government interest that informs the regulatory scheme pursuant to which the inspection is made"; (2) the inspections must be necessary "to further the regulatory scheme"; and (3) the regulatory statute must "provide a constitutionally adequate substitute for a warrant."  *Id*. at 702-03 (citations omitted).  With regard to the last requirement, the regulatory statute must "advise the owner of the commercial premises that the search is being made pursuant to law and has a properly defined scope, and it must limit the discretion of the inspecting officers."  *Id*. at 703.  Put another way, the statute "must be sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes."  *Id*. (citing *Donovan v. Dewey*, 452 U.S. 594, 600 (1981)).

        Section 106(15) of the Alcoholic Beverage Control Law allows inspection of any retail licensed premises "by any peace officer [or] police officer . . . during the hours when the said premises are open for the transaction of business," *see* Al. Bev. Cont. L., § 106(15).  *Compare Burger*, 482 U.S. at 711 (upholding statute that permitted inspections "during the regular and usual business hours" at the premises).  Applied here, *Burger* mandates that plaintiffs' motion for leave to amend be denied because the facts establish that (i) Time's Up collected an entry fee at the door on the night of Oct. 29, 2004, (ii) alcohol was served inside the premises, and (iii) Time's Up does not have a license to sell alcoholic beverages.  *See Sutton*, 93 Misc.2d at 1027-28, 403 N.Y.S.2d at 445-46.  Time's Up was therefore engaged in a "closely

regulated" business that is subject to periodic, warrantless searches under state law, which are consistent with the Fourth Amendment.

Plaintiffs may assert that section 106(15) only allows inspections of "retail licensed premises," and since Time's Up did not own a license it could not be subjected to inspections under the statute. *Burger* implicitly rejected that argument, however, because it upheld the warrantless search even though the owner of the junkyard did not have a license. The decisive fact is that he was engaged in an industry that is "closely regulated" by the state because it has a legitimate interest in oversight and licensing requirements. *See Burger*, 482 U.S. at 695. Time's Up was similarly engaged in such a business on the night of Oct. 29-30, 2004.

In addition to the foregoing, officers could have entered Time's Up without a warrant on the night of Oct. 29-30, 2004, pursuant to the New York City Administrative Code which regulates cabarets and catering establishments.[3]  Under these regulations, a cabaret is defined as "any room, place or space . . . in which any musical entertainment, singing, dancing or other form of amusement is permitted in connection with . . . the business of directly or indirectly . . . selling to the public food or drink . . . ." N.Y.C. Admin. Code, § 20-359(3).  Any cabaret within the City must be licensed, and the license must be "posted at the main entrance" of the premises. *Id.*, § 20-364.  As noted above, all three Alford plaintiffs acknowledged that there was music and dancing inside Time's Up on the night of Oct. 29-30, 2004, and admitted that they consumed alcohol inside.  (Larkin Dec., Exh. A-C)  The public records show that Time's Up does not have a cabaret license and plaintiffs have not alleged the contrary.

All cabarets, which are "licensed establishments" under the Administrative Code, are subject to regular inspection by the Commissioner of the Department of Consumer Affairs.

---

[3]      These regulations are not preempted by the Alcoholic Beverage Control Law. *Cowgirl, Inc. v. Dept. of Consumer Affairs*, 234 A.D.2d 42 (1st Dept. 1996).

*Id.*, § 20-114(a).  Furthermore, the commissioner is authorized to promulgate regulations to enforce licensing requirements, *id.*, § 20-104(b), and one such regulation specifically provides: "During the period that a public dance hall, cabaret or catering establishment is occupied by patrons or guests, every part thereof shall be kept accessible to authorized members of the Police Department and Department of Consumer Affairs' inspectors." R.C.N.Y. § 2-202.  Analogous regulations permitting warrantless searches of other businesses that are required to be licensed have been upheld by the courts as constitutional.  *See, e.g., Amsterdam Garage v. Dept. of Consumer Affairs*, 139 Misc.2d 799, 804, 529 N.Y.S.2d 243, 246 (Sup. Ct. N.Y. County 1988), *aff'd*, 157 A.D.2d 460 (1st Dept.), *app. denied*, 76 N.Y.2d 701 (1990) (upholding warrantless searches of City garages).

Given the facts alleged in the Complaint, the admissions of the three <u>Alford</u> plaintiffs and the proof established by the videotape, it cannot fairly be disputed that Time's Up was engaged in the sale of liquor and/or the operation of a cabaret or public dance hall, without the proper licenses, on the night of Oct. 29-30, 2004.  Under these circumstances, the law is clear that police officers could have entered Time's Up without a warrant pursuant to the Alcohol Beverage Control Law or the Department of Consumer Affairs regulations governing the operation of cabarets within the City.  For this reason, to the extent Time's Up asserts injury by reason of defendants' purportedly unlawful entry onto the premises, the Complaint fails to state a claim and should be dismissed under Rule 12(b)(6).

**B.    Officers Could Have Entered Time's Up In Order to Enforce City Building Codes**

The City Charter provides that "the police department and force shall have the power and it shall be their duty . . . to enforce and prevent the violation of all laws and ordinances in force in the city, . . . ."  N.Y. City Charter, § 435(a).  The City Administrative Code, in turn, provides that "it shall be unlawful to use or occupy any building or premises or

part thereof as a place of assembly unless and until a permit therefore shall have been issued" by the Buildings Department. N.Y.C. Admin. Code, § 27-525.1(a). The term "place of assembly" is defined as "an enclosed room or space in which seventy-five or more persons gather for . . . political or social purposes, or for the consumption of food or drink." *Id.*, § 27-232. The Complaint alleges facts suggesting that at least seventy-five people were present at Time's Up on the night of Oct. 29-30, 2004; for example, the Complaint alleges that "many" of the participants in the Critical Mass ride were invited to, and attended, the fundraiser (Complaint, ¶¶ 86, 93). In addition, plaintiff Mandy Hu told the CCRB that the space had been "quite crowded" during the night (Larkin Dec., Exh. C). Officer statements to the CCRB indicated that as many as 200 people were inside Time's Up or on the sidewalk and street outside the entrance. (*Id.*, Exh. D, E)

At a minimum, therefore, plaintiff's own allegations and the <u>Alford</u> plaintiffs' admissions suggest that police officers on the scene had reason to believe that a large crowd had gathered inside the space, without a permit, in violation of the City Building Code. Under the circumstances, in accordance with their duties under Section 435 of the City Charter, the officers had the right to enter the premises to investigate whether unlawful activity took place. Defendants submit that the use of public spaces is "closely regulated" in much the same way that the sale of liquor is closely regulated, and therefore that the officers' entry into the premises without a warrant was consistent with the Fourth Amendment. *See Burger*, 482 U.S. at 702-03. For this additional reason, the Complaint should be dismissed in its entirety, with prejudice.

Apart from the foregoing, even assuming that probable cause was required for entry into the Time's Up premises, the undisputed facts establish that probable cause existed to believe that Time's Up was violating either (i) the Alcohol Beverage Control Law, (ii) the City cabaret laws, or (iii) City building codes. For this additional reason, the officers had the lawful

right to enter Time's Up and could have issued summonses and/or made arrests of the appropriate, responsible persons. *See generally Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

### C.    Officers' Allegedly Blocking the Entrance to Time's Up Cannot be Shown to Have Caused Injury to Time's Up

In order to plead a cause of action under Section 1983, plaintiff must allege facts demonstrating that "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of* Westchester, 136 F.3d 239, 245 (2d Cir. 1998). With regard to (2), the plaintiff "must prove that the defendant's action was a proximate cause" of his or her injury, *i.e.*, plaintiff must show in all cases that "the causal connection between the defendant's action and the plaintiff's injury is sufficiently direct." *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998). The concept is analogous to that recognized under state tort law, *Barnes v. Anderson*, 202 F.3d 150, 158 (2d Cir. 1999), which means that there must be "some direct relation between the injury asserted and the injurious conduct alleged." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999), *cert. denied*, 528 U.S. 1080 (2000) (internal quotes omitted).

Plaintiffs allege that defendants "formed a wall of officers blocking the front of the Time's Up space," and allege that Time's Up was injured because, as *noted* above, (1) its right to freedom of association was impaired, resulting in damage to Time's Up's reputation and goodwill, and bringing upon Time's Up "public disapprobation [and] disgrace" (*id.*, ¶¶ 259, 274), and (2) it was harmed in its fund-raising efforts on the night of Oct. 29-30, 2004, and thereafter (*id.*, ¶ 258, 262). None of these purported injuries can be said to be the "direct result" of defendants' conduct in forming a "wall of officers" outside the Time's Up space on Oct. 29-30, 2004:    (1) There is simply no direct connection between any alleged impairment of

association or "public disapprobation and disgrace" by reason of the officers' alleged presence outside of the Time's Up entrance; and (2) to the extent the alleged "wall" of officers prevented other persons from entering Time's Up and paying the "donation" or "entry fee," thus harming Time's Up fundraising efforts, Time's Up does not have a cause of action because it was illegally selling liquor and/or running a cabaret on the premises which justified police action at the time.

Accordingly, the foregoing allegations do not give rise to a cause of action on behalf of Time's Up.

**D.    Time's Up's Remaining Allegations do not State a Cause of Action**

Time's Up makes a number of other allegations unrelated to the events of Oct. 29-30, 2004, which, even if true, do not set forth violations of Time's Up's civil rights. <u>First</u>, Time's Up alleges that prior to the Republican National Convention, the NYPD gathered "intelligence" about Time's Up "including that they were having a planning conference prior to the RNC," and that this intelligence "associated Time's Up with Critical Mass." (Complaint, ¶¶ 34, 36)  Plaintiffs do not allege that they suffered any harm by reason of the purported intelligence-gathering, and in the absence of well-pleaded allegations of injury and causation, these allegations do not constitute a viable cause of action.  *See Barnes,* 202 F.3d at 158; *Laborers Local 17,* 191 F.3d at 235; *Gierlinger,* 160 F.3d at 872.

<u>Second</u>, Time's Up alleges that prior to the Oct. 29, 2004, Critical Mass bicycle ride, Police Commissioner Raymond Kelly published an op-ed piece in the New York Daily News entitled, "Extremists Have Hijacked the Bike Rides," and allegedly referred to Time's Up as the "extremists." (Proposed Amended Complaint, ¶¶ 77-79)  Commissioner Kelly's writing

the op-ed piece, however, would not appear to establish a constitutional violation for which Time's Up can sue, and our research has not located any authority to the contrary.

Third, Time's Up alleges that the City brought litigation against it in New York State Supreme Court, captioned *City of New York v. Time's Up, et al.*, 2005-CV-400891, seeking an injunction "stopping" the Critical Mass bicycle rides, and that the injunction was denied. (Complaint, ¶¶ 179-82)  Plaintiff does not point to any case law holding that the commencement of a civil action by a municipality that is unsuccessful, without more, somehow establishes a constitutional violation, and our research has found none.  To the extent Time's Up purportedly seeks attorney's fees or "associated legal expenses" in connection with the lawsuit, (*e.g.*, Complaint, ¶ 197), it could have moved in that action for an award of fees, *see* 22 N.Y.C.R.R. §§ 130-1.1, *et seq.*, but evidently chose not to do so.  Our research has not located any authority suggesting that plaintiff may do so here.

Fourth, Time's Up obliquely alleges that defendants violated its rights by "ticketing its neighbors." (Complaint, ¶¶ 251-53)  This allegation is an apparent reference to the issuance of three summonses for disorderly premises and contaminated liquor to the owner of a bar located next door to Time's Up, at 47 East Houston Street.  Time's Up, however, lacks standing to assert claims for alleged violations of the civil rights of others, which rights are "personal" to those allegedly aggrieved, *see League of Women Voters*, 737 F.2d at 160, and accordingly these factual allegations do not support any claim on behalf of Time's Up.

### Conclusion

For the reasons set forth above, defendant City of New York respectfully submits that the Complaint should be dismissed in its entirety, with prejudice, under Rules 12(b)(1) and 12(b)(6).

Dated:      New York, New York
            January 14, 2008

Respectfully submitted,

MICHAEL A. CARDOZO
Corporation Counsel of the City of   New York
100 Church Street
New York, New York 10007
(212) 788-1599

By:

Arthur G. Larkin (AL 9059)

21