UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

TIME'S UP, INC.,

                                                    Plaintiff,

          -against-                                  07-CV-9557 (PAC)

THE CITY OF NEW YORK, COMMISSIONER OF THE
CITY POLICE DEPARTMENT RAY KELLY, OFFICER
CAROLYN FANALE, OFFICER STEVEN BOBBETT,
OFFICER LUIS MORTIMER, DEPUTY INSPECTOR
THOMAS GRAHAM, and APPROXIMATELY 34
OTHER UNIDENTIFIED NEW YORK CITY POLICE
OFFICERS,

                                                   Defendants.

------------------------------------------------------------------------ x


## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS THE COMPLAINT


                                                    MICHAEL A. CARDOZO
                                     Corporation Counsel of the City of New York
                                            *Attorney for Defendant*
                                                    100 Church Street
                                                 New York, New York 10007
                                                       (212) 788-1599

                                                              <u>Of Counsel:</u>

                                                              Arthur G. Larkin

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT

    I.    PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE TIME-BARRED ............................................................................................... 2

    II.    PLAINTIFF'S CLAIMS AGAINST THE CITY ALSO SHOULD BE DISMISSED ............................................................................................................. 6

    III.    PLAINTIFF HAS FAILED TO PLEAD "RETALIATION" BY THE CITY ............................................................................................................................... 7

    IV.    TIME'S UP VIOLATED THE ALCOHOL BEVERAGE CONTROL LAW AND CITY ADMINISTRATIVE CODE ON OCT. 29-30, 2004, JUSTIFYING POLICE ACTION ............................................................................ 9

CONCLUSION ....................................................................................................................... 11

**Preliminary Statement**

In opposition to defendants' motion, plaintiff Time's Up, Inc. ("Time's Up") asserts that the police action on Oct. 29-30, 2004, was unconstitutional because (accepting the allegations of the complaint as true) it was undertaken in retaliation for Time's Up's expression of support for Critical Mass. As shown below, this argument should be rejected because the allegations of the complaint, even if read liberally, do not support the inference that there was any causal connection whatsoever between Time's Up's alleged protected activity and police action initiated by a lieutenant and other rank-and-file police officers on the night of Oct. 29-30, 2004.

In addition, the complaint should be dismissed in its entirety on the separate and independent ground that plaintiff failed to serve any of the individual defendants within the 120-day time limit of Rule 4(m) of the Federal Rules of Civil Procedure. After multiple inquiries by defense counsel, plaintiff's counsel finally arranged for service on the individual defendants on Feb. 26, 2008, four days after the 120-day time limit (*see* DE 10). Plaintiff commenced this action on Oct. 25, 2007, five days before expiration of the statute of limitations, and (it appears) made no effort whatsoever to serve the individual defendants during the 120 days after that date. Because the three-year statute of limitations has now expired, all of plaintiff's claims against the individual defendants should be dismissed as time-barred. Recent Second Circuit authority makes clear that where the plaintiff fails to attempt service within the 120-day period, the courts should not exercise discretion and extend the deadline for service – even where service was made shortly after the 120-day deadline <u>and</u> the statute of limitations would operate to bar plaintiff's claims. In addition, all of plaintiff's claims against the City should be dismissed because, in the absence of an underlying constitutional violation, plaintiff cannot make out any Section 1983 claims against the City.

## Argument

I. **Plaintiff's Claims Against the Individual Defendants are Time-Barred**

Plaintiff commenced this action on Oct. 25, 2007. The claims arise out of events that occurred on Oct. 29-30, 2004, which means that the complaint was filed five days before the limitations period would have expired. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (statute of limitations for Section 1983 claims is three years). The limitations period is tolled during the time allowed for service upon the defendants, which is 120 days, *see* Fed. R. Civ. P. 4(m), but after expiration of the 120-day period the toll is lifted and the statute commences to run again. *Zapata v. City of New York*, 502 F.3d 192, 194 n.4 (2d Cir. 2007). In this case, the 120-day period after filing expired on Feb. 22, 2008, and the five days left in the statute of limitations expired on Feb. 27, 2008. Accordingly, plaintiff's failure to effect service upon the individual defendants prior to Feb. 22, 2008, warrants dismissal of the action as to those defendants on the grounds that it is time-barred.

Plaintiff has named five individual defendants: Police Commissioner Raymond Kelly, Lt. Carolyn Fanale, Police Office Stephen Bobbett, Police Officer Luis Mortimer, and Deputy Inspector Thomas Graham (*see* DE 1). On the date the action was commenced and the next day, plaintiff's counsel requested defendants' counsel four separate times to accept service, or waivers of service, on behalf of the individual defendants. The undersigned advised plaintiff's counsel three times, by e-mail communication, that the Corporation Counsel's office is not authorized to accept service on behalf of individual police officers. (Larkin Reply Dec., Exh. A, e-mail transmissions on 10/25/07 @ 7:23 p.m., 10/26/07 @ 1:09 p.m., and 10/26/07 @ 1:23 p.m.) Plaintiff's counsel was well aware of his obligation to serve these individuals at their commands, stating in one e-mail transmission that if the undersigned did not accept service then

the individuals would "get served at their place of business" instead. (*Id.*, e-mail transmission from Stecklow to Larkin on 10/26/07 @ 11:03 a.m.)

Two and one-half months later, prior to making the instant motion, the undersigned inquired if plaintiff had served the individual defendants. (*Id.*, Exh. B, e-mail transmission on 1/8/08 @ 7:40 p.m.) Plaintiff's counsel replied that they had not been served. (*Id.*, e-mail transmission from Stecklow to Larkin on 1/9/08 @ 12:16 p.m.) The undersigned then asked if counsel intended to serve them, and if so, whether counsel would consent to an extension for filing defendants' motion to dismiss so that the motion could be made on behalf of all defendants, not just the City (the only defendant that had been served at that point). (*Id.*, e-mail transmission on 1/9/08 @ 12:16 p.m.) Plaintiff's counsel replied by requesting for the fifth time that the Corporation Counsel accept service for all defendants. (*Id.*, e-mail transmission from Stecklow to Larkin on 1/10/08 @ 1:25 p.m.) The Corporation Counsel did not agree to accept service.

On Feb. 26, 2008, the undersigned again inquired if plaintiff's counsel had served the individual defendants, but received no answer. (*Id.*, Exh. C, e-mail transmission on 2/26/08 @ 11:05 a.m.) Apparently in response to defense counsel's latest inquiry, however, plaintiff finally effected service on the individual defendants on that date (*see* DE 10, copy attached to Larkin Dec., as Exhibit D). On Feb. 28, 2008, the undersigned called plaintiff's counsel and asked whether service had been effected. Counsel advised that service on the individual defendants had been accomplished on "either Monday or Tuesday" of this week, i.e., Feb. 25, or 26, 2008. (Larkin Reply Dec., ¶ 4) The affidavits of service that were finally posted on the ECF docket purportedly indicate that service was made on Feb. 26, 2008.

Rule 4(m) of the Federal Rules of Civil Procedure provides that if a defendant is not served within 120 days after the complaint is filed, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." If the plaintiff shows "good cause for the failure [to serve], the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Under this provision, the court has discretion (1) to decide whether there is "good cause" for the failure to serve, in which case an extension is mandated, or (2) to grant an extension "even in the absence of good cause." *Zapata*, 502 F.3d at 196-97. In order to justify <u>any</u> extension – whether based on good cause or the court's discretion in the absence of good cause – the plaintiff "must ordinarily advance some colorable excuse for neglect." *Id.* at 198 (citation omitted). If the plaintiff fails to do so, the Second Circuit will not even consider vacating a Rule 4(m) dismissal for an abuse of discretion. *Id.*

Here, plaintiff has no excuse whatsoever for its neglect. Plaintiff's counsel was advised three times that the Corporation Counsel was not authorized to accept service or waivers of service for the individual defendants. (Larkin Dec., Exh. A, B) He knew that service was required to be made at the defendants' place of business. (*Id.*, Exh. A, e-mail transmission from Stecklow to Larkin on 10/26/07 @ 11:03 a.m.) Despite defense counsel's inquiries about the status of service, plaintiff's counsel (apparently) failed to make any effort whatsoever to serve the defendants, preferring instead to ask the Corporation Counsel's office five times whether they would accept service for the individual defendants (and suggesting despite advice to the contrary that the Corporation Counsel was required to do so). (*Id.*, Exh. A, B) Plaintiff's failure to take any steps to effect service during the 120-day period therefore warrants dismissal.

The decisions applying Rule 4(m) support this result. In *Zapata*, for example, also a Section 1983 case, the Second Circuit upheld the district court's exercise of discretion dismissing

the complaint where service was made on the individual defendant four days after the 120-day period expired. The expiration of the statute of limitations did not change the result: The court held that district courts have discretion to weigh the prejudice to both sides where expiration of the 120-day period would result in dismissal with prejudice due to the statute of limitations bar, noting that "while the limitations period was tolled for the [120-day] service period, prejudice does not toll." *Zapata*, 502 F.3d at 198. The court further noted that the individual defendant did not have notice that the action was forthcoming "and service was effected almost three months after the limitations period would have run had the complaint never been filed." *Id.* at 198-99. Here, similarly, service was apparently made <u>four</u> months after the statute of limitations would have expired had the complaint not been filed.

Even if the prejudice to the individual defendants is "slight," plaintiff can advance no excuse whatsoever for failing to serve them in timely fashion. Like the plaintiff in *Zapata*, plaintiff here "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time [or at all], and has advanced no cognizable excuse for the delay." *Id.* at 199. And, like the plaintiff in *Zapata*, plaintiff here never "requested any information from the City" about where to serve the individual defendants, even though the City "pointed out the failure to serve" the individual defendants before, and at the time, it filed its motion to dismiss the complaint (Larkin Dec., Exh. B; DE 7, at 1 n.1). *See Zapata*, 502 F.3d at 199. In such cases, plaintiff's counsel should not "assume that the City [will] gratuitously supply the information necessary to effect service," since the City is not required to do so. *Id.*

Decisions from the district courts in this Circuit also support dismissal here. *See Hertzner v. United States Postal Service*, 05-CV-2371 (DRH) (ARL), 2007 U.S. Dist. LEXIS 19691, *20-25 (E.D.N.Y. Mar. 20, 2007) (denying extension where service made approximately

three weeks after 120-day period even though statute of limitations had run); *Deptuch v. Abraham Joshua Heschel School*, 06-CV-6000 (LAP), 2007 U.S. Dist. LEXIS 92916, *3-4 (S.D.N.Y. Dec. 17, 2007) (dismissing complaint where service had been made two days past the 120-day period, holding that "the mere absence of prejudice to the defendant is not a sufficient reason to ignore the Federal Rules") (citing *Zapata*, 502 F.3d at 197); *Trotman v. Grand Central Partnership, Inc.*, 06-CV-15450 (CM), 2007 U.S. Dist. LEXIS 85133, *6-8 (S.D.N.Y. Oct. 19, 2007) (denying extension where plaintiff's counsel failed to correct error in service despite advice from counsel that service was defective) (citing *Zapata, supra*); *Glover v. City of New York*, 05-CV-5552 (ENV) (RML), 2006 U.S. Dist. LEXIS 7693, *12-13 (E.D.N.Y. Feb. 2, 2007) (denying extension because "attorney neglect, alone, . . . cannot constitute good cause" for failure to serve); *Sleigh v. Charlex, Inc.*, 03-CV-1369 (MBM), 2004 U.S. Dist. LEXIS 19118, *14-15 (S.D.N.Y. Sept. 14, 2004) (pro se plaintiff's unexplained failure to deliver papers to marshal until after expiration of 120-day period warrants dismissal).

## II.    Plaintiff's Claims Against the City Also Should be Dismissed

In order to recover damages against a municipality under Section 1983, plaintiff must first prove an underlying constitutional violation by an individual officer. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (Section 1983 does not authorize "the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"). Because plaintiff has failed to assert cognizable claims against any individual officers, it cannot prove that any of them inflicted any constitutional harm against it, and without such proof plaintiff cannot recover damages against the City. For this reason, plaintiff's claims against the City should be dismissed.

### III. Plaintiff has Failed to Plead "Retaliation" By the City

Apart from plaintiff's failure to serve the individual defendants in timely fashion, the complaint should be dismissed because the allegations are insufficient to establish "retaliation" by the City in violation of Time's Up's First Amendment rights. In order to sustain a retaliation claim, plaintiff must plead facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and adverse action." *Gill v. Pidylpchak*, 389 F.3d 379, 380 (2d Cir. 2004). The facts supporting the claim must be set forth in "non-conclusory terms." *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 106 (2d Cir. 2001).

The complaint here does not satisfy the third element of the *Gill* test. In order to show a "causal connection," plaintiff must plead facts showing that its protected activity was a "substantial motivating factor" in bringing about the adverse action. *Washington v. County of Rockland*, 373 F.3d 310, 321 (2d Cir. 2004). Plaintiff alleges that it strongly supports Critical Mass, which is protected First Amendment activity. Plaintiff also alleges that the NYPD began to "crack down" on Critical Mass at or about the time of the Republican National Convention in August, 2004, and that the purported "crack down" continued until August, 2006. (Complaint, ¶¶ 33-70) Plaintiff alleges in conclusory terms that the police action on Oct. 29-30, 2004, was in retaliation for Time's Up's support of Critical Mass, but alleges no <u>facts</u> whatsoever to connect the police action with Time's Up's alleged protected activity. It is not alleged that any of the officers who were present at Time's Up had anything to do with the purported "crack down" on Critical Mass; or that those officers even knew that Time's Up supported Critical Mass. In the absence of well-pleaded allegations of a "causal connection" between protected activity and the adverse action, the complaint should be dismissed. *See Gill*, 389 F.3d at 380.

Moreover, the complaint fails to allege facts sufficient to support liability against the City on a *Monell* claim. Plaintiff has not alleged a "formal" policy that would support liability against the City. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). Since no individual defendants are left in the case, plaintiff would have to plead facts showing that an official or officials responsible for establishing final policy with respect to the matter in question took action or made a specific decision which caused the alleged violation of plaintiff's constitutional rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (plurality opinion).

Here, however, the facts alleged, if true, only show that lower-level police department officials were involved in the purported violations of plaintiff's rights. The only allegation even remotely suggesting the involvement of a municipal policymaker is set forth in paragraph 83: "Upon information and belief, NYPD activities relating to the October, 2004, critical mass bike ride were directed, coordinated and controlled at the highest levels of the NYPD, including defendant Commissioner Raymond Kelly." However, it is nowhere alleged that Commissioner Kelly was present at Time's Up on Oct. 29-30, 2004, or that he directed any of the police action that occurred that night. Rather, it is alleged that arrests were made by Lt. Fanale and other officers (Complaint, ¶¶ 118-160), and it is also alleged that Deputy Inspector Graham "was the senior ranking officer at the time and place of occurrence underlying the complaint." (*Id.*, ¶ 17) The allegation that Commissioner Kelly directed "activities relating to the October, 2004, critical mass bike ride," even if true, is too attenuated to support liability against the City for the specific police action that took place at Time's Up – many hours after the Critical Mass ride was over. *See Bell Atlantic v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (allegations in the pleading "must be enough to raise a right to relief above the speculative level").

### IV. Time's Up Violated the Alcohol Beverage Control Law and City Administrative Code on Oct. 29-30, 2004, Justifying Police Action

Plaintiff does not deny that alcohol was consumed inside the premises on Oct. 29-30, 2004, nor does it deny that it required all persons who entered Time's Up to pay an entry fee at the door before coming inside. However, plaintiff advances a series of tortured arguments in order to avoid the conclusion that it violated the Alcohol Beverage Control Law and City Administrative Code, none of which have any merit.

First, plaintiff states that the officers at the scene could not possibly have known that Time's Up was selling alcoholic beverages or violating the cabaret laws. (Plaintiff's Mem., at 15) This argument borders on frivolous: The CCRB statements of just two of the officers present at Time's Up, submitted in support of defendant's motion (Larkin Dec. 1/14/08, Exhibits D, E), reflect reports that they saw approximately 150-200 people gathered on the sidewalk outside Time's Up, many of whom were drinking from open containers.

Second, relying on *Payton v. New York*, 445 U.S. 573 (1980), plaintiff asserts that warrantless searches under the circumstances here, if permitted, would "denigrate" the Fourth Amendment. However, *Payton* merely affirms that an arrest of a person inside his/her home generally must be made with a warrant or it is unconstitutional. *Payton*, 445 U.S. at 587-88. That decision did not address warrantless searches of closely regulated businesses.

Third, plaintiff asserts that Time's Up is a "legitimate . . . charitable club" and therefore falls within an exception set forth in *New York State Liquor Authority v. Sutton*, 93 Misc.2d 1024 (Sup. Ct. N.Y. County 1978). However, the facts known to the officers who arrived at the scene and the admission by Time's Up that it charged an entry fee at the door in exchange for, among other things, alcoholic beverages, establishes probable cause as a matter of law that would support a reasonable belief by the officers that Time's Up was operating a liquor retail

establishment or cabaret in violation of the law. Again, Time's Up does not directly dispute that it collected an entry fee and served alcohol inside the premises.

Fourth, Time's Up asserts that only "licensed" premises are subject to warrantless inspections under the Alcohol Beverage Control Law, and that since Time's Up was not "licensed" it was not subject to warrantless inspections. (Plaintiff's Mem., at 16-17) New York state courts, however, have consistently rejected this interpretation of the statute. *E.g., People v. Benigna*, 144 Misc.2d 744, 745-46 (Crim. Ct. Kings County 1989) (upholding warrantless inspection of unlicensed premises selling liquor, because "compliance with the [applicable] regulations is necessary to the public's safety regardless of whether the owner chooses to violate the law by serving liquor . . . without a license").

Fifth, plaintiff asserts that Section 106(15) of the Alcohol Beverage Control Law is unconstitutional as applied to Time's Up. (Plaintiff's Mem., at 18-19) This argument is frivolous because the constitutionality of statutes permitting warrantless inspections of the liquor industry has long been recognized. *E.g., United States v. Rivera*, 01-CR-866 (TPG), 2001 U.S. Dist. LEXIS 20235, *3-4 (S.D.N.Y. Dec. 7, 2001) (warrantless arrest inside premises that were searched pursuant to Al. Bev. C. Law § 106(15) upheld as constitutional) (citing *New York v. Burger*, 482 U.S. 691 (1987)).

Sixth, plaintiff asserts that Time's Up was not subject to the cabaret laws because only one of the three Alford plaintiffs – Laura Starecheski – told the CCRB that there was music and dancing inside Time's Up. (Plaintiff's Mem., at 19-20) Regardless of whether one of the three plaintiffs, or all three, admitted this fact, plaintiff does not deny it and therefore concedes that it is true. For this reason, the officers could have entered Time's Up without a warrant in order to enforce the City cabaret laws. (Defendants' Mem., at 15-16)

## Conclusion

For the reasons set forth above, as well as those set forth in defendants' moving brief, defendant City of New York respectfully submits that the Complaint should be dismissed in its entirety, with prejudice, under Rules 4(m), 12(b)(1) and 12(b)(6).

Dated:      New York, New York
            February 29, 2008

                                        Respectfully submitted,

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the City of New York
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 788-1599

                                By:     _____
                                        Arthur G. Larkin (AL 9059)

- 11 -