# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TIME'S UP, INC.

                                              *Plaintiff*,

      v.                                     Case No. 07CV9557 (PAC)

THE CITY OF NEW YORK, COMMISSIONER OF THE NEW YORK
POLICE DEPARTMENT RAY KELLY, OFFICER CARLYN FANALE, OFFICER
STEVEN BOBBETT, OFFICER LUIS MORTIMER, DEPUTY INSPECTOR THOMAS
GRAHAM *and* APPROXIMATELY 34 OTHER UNIDENTIFIED
NEW YORK CITY POLICE OFFICERS,

                                              *Defendants.*


**SUR-REPLY BRIEF OF PLAINTIFF TIME'S UP IN FURTHER**

**OPPOSITION TO DEFENDANT NEW YORK CITY'S MOTION**

**TO DISMISS THE COMPLAINT**


            **TIME'S UP, INC.**, Plaintiff

            By

            WylieLAW
            WYLIE M. STECKLOW, ESQ.( WMS 6012)
            10 SPRING – SUITE 1 – N Y C   10012
            Phone:       212 566 8000
            Fax:          212 202 4952
            E-mail:wylie@WYlielAW.com

TABLE OF CONTENTS

Table of Authorities ……………………………………………………………… ii

Preliminary Statement
**Dismissal Of The Individual Defendants At Issue Would Benefit The Defendants Inequitably From Their Discovery Failures And The Numerous Delays And Time Extensions Used In Defense Of This Case** …………………………………………….. 1

**A.**   **The Statute Of Limitations May Have Been Tolled During The Pendency Of The Alford Motion To Amend**……………………... 2

**B.**   **Rule 4(M) Operates Not As An Outer Limit Subject To Reduction But As An Irreducible Allowance** ……… 3

**C.**   **Defendants Should Not Be Allowed To Prevail On The Technicalities Of Personal Jurisdiction When They Have Failed To Comply With This Court's Orders To Identify At Least Two "John Doe" Defendants For Over A Year**……………………. 7

**D.**   **Even If This Court Dismisses Against All Of The Other Individual Defendants, The Plaintiff Can Proceed Against The City Of New York And Commissioner Kelly**……..……...… 9

Conclusion ……………………………………………………………………… 12

**Cases**

*Baptiste v. Cavendish Club, Inc.*, 670 F.Supp. 108 (S.D.N.Y. 1987) ............................................. 6

*Barcher v. New York University School of Law*, 993 F.Supp. 177 (S.D.N.Y. 1998) ..................... 5

*City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988) ............................................................ 9, 10, 12

*Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*,
951 F.2d 1357, 1366 (2nd Cir. 1991) ............................................................................................. 8

*Ezekwo v. New York City Health & Hosp. Corp.,* 940 F.2d 775, 780-81 (2d Cir. 1991),
*cert. denied,* 502 U.S. 1013 (1991) .............................................................................................. 11

*Florence v. Krasucki,* 533 F.Supp. 1047, 1054 (W.D.N.Y. 1982) ................................................. 5

*Gill v. Pidylpchak*, 389 F.Supp.3d 379, 380 (2d Cir. 2004) ......................................................... 11

*Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996) .................................................................. 11

*Henderson v. U.S.,* 517 U.S. 654, 661 (1996) ................................................................................ 6

*Hernandez v. Coughlin,* 18 F.3d 133 (2d Cir. 1994) ...................................................................... 9

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) .................................................................................................................... 7, 8

*Mercy v. Suffolk County, New York*, 748 F.2d 52 (2d Cir. 1984) .................................................. 8

*Mitchell v. Hendricks,* 68 F.R.D. 564, 567 (E.D.Pa.1975) ............................................................ 5

*Monell v. Dept. of Social Services,* 436 U.S. 658 (1978) .............................................................. 9

*Morrison v. Lefevre*, 592 F.Supp. 1052 (S.D.N.Y. 1984) .............................................................. 5

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977) ..................................... 11

*Pembauer v. City of Cincinnatti,* 475 U.S. 469 (1986) .................................................................. 9

*Tahira Alford v. City of New York, et al.*, 06-CV-3512 (PAC) ..................................................... 1

*White-Ruiz v. City of New York* ......................................................................................... 9, 11, 12

*PRELIMINARY STATEMENT:*

**Dismissal Of The Individual Defendants At Issue Would Benefit The Defendants Inequitably From Their Discovery Failures And The Numerous Delays And Time <u>Extensions Used In Defense Of This Case</u>**

The instant action seeking relief for violations of the Plaintiffs' Time's UP!, Inc. (hereinafter, "Time's Up")'s civil rights under 42 U.S.C. §1983 (hereinafter "§1983) was brought after this Honorable Court denied Plaintiffs' Motion For Leave To Amend The Complaint (hereinafter "Plaintiffs' Motion To Amend") in the prior action of *Alford v. NYC,*, 06-CV-3512 (PAC) ("Prior Litigation," or "Alford Litigation").  Plaintiff's Motion To Amend was filed with this Court on May 29, 2007 and denied without stated cause or prejudice by this Court on October 22, 2007. (It is argued below that the statute of limitations was tolled during this time period).

The goals of Plaintiffs' Motion To Amend were twofold; first, leave of the Court was sought to allow the instant Plaintiffs to join the Prior Litigation, as Time's Up believed and alleged that their own injuries arose from the same occurrence as the Alford Plaintiffs, namely, the October 29-30, 2004 police action in and around the Time's UP's headquarters.  Second, leave to amend was sought in order to hale some of the "John Doe" Police Defendants who had been identified through discovery into the Prior Litigation.

In the instant action, which was commenced on October 25, 2007, Defendants applied for and received a sixty (60) day extension of time to file an answer or motion responding to the Complaint.  A further extension of fourteen (14) days to file their Motion to Dismiss reply brief was requested (and granted) three (3) days **after** the Defendants' deadline for filing had passed. Throughout the Alford Litigation, Defendants received numerous time extensions including an initial 60 day extension of time to answer as well as several further extensions, continuances and reschedulings throughout the action.  In all, Defendants have received in excess of one hundred thirty seven (137) days of extensions in this case and in the Alford Litigation, as well as a total of

1

a total of sixty-nine (69) days from the time that Defendants' Counsel was initially served with Plaintiff's Motion For Leave To Amend to the time that they were obligated to serve a response to that Motion.

Plaintiffs are aware of the caseload borne by the NYCity Law Department's attorneys, and do not begrudge them the extensions that they have requested and received in this matter and its predecessor; rather, Plaintiffs merely request that the Court consider, in addition to the points of law put forth below, a balancing of the equities that would favor not dismissing with prejudice the Plaintiff's lawsuit due to service that was four (4) days late.

A.         **The Statute Of Limitations May Have Been Tolled During The Pendency Of The Alford Motion To Amend**

Plaintiffs' counsel mistakenly stated in the March 3, 2008 letter to chambers (Stecklow Exh. A) that the statute of limitations would bar re-filing the instant complaint pursuant to a dismissal. Further research of the tolling issue, raised by Plaintiffs' October 19, 2007 letter to chambers, reveals that the service on the individual defendants in this case may not have occurred outside or even near the statute of limitations for the instant action.

The New York State Court of Appeals has held justice requires that the statute of limitations to be tolled during the pendency of motions to add new parties to a litigation.

> Statute of Limitation are designed to promote justice by preventing prejudice through the revival of stale claims… That goal would not be served by a rule which would render the timeliness of a claim dependent upon the speed with which a court decides a motion. *Perez v. Paramount Communications, Inc.*, 92 N.Y.2d 749, 754, 709 N.E.2d 83, 86 (N.Y. 1999) (*internal citations omitted.*).

This Appellate Court was ruling in a case of first impression based on a newly adopted commencement-by-filing system, and relied upon 'the Federal Rule' in reaching its decision; "…our holding finds support in the Federal commencement-by-filing system which 'served as

2

the model' for New York's system." *Perez* at 755, 86 (*internal citations omitted*).  Further, this Court recounted that:

> [U]nder the Federal rule, the filing of a motion to amend the complaint to add a defendant to the action, when accompanied by a copy of the amended complaint, has long been held sufficient to stop the running of the Statute of Limitations. <u>Id.</u>, *citing Moore v. State of Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1983), *Mayes v. AT&T*, 867 F.2d 1172 (8th Cir. 1989), *Longo v. Penn Elec. Co.*, 618 F.Supp. 87 (W.D. Pa 1985), *aff'd*, 856 F.2d 183 (3d Cir. 1988), *Rademaker v. ED Flynn*, 17 F.2d 15 (5th Cir. 1927). *Perez at 755, 86.*

The Supreme Court's holding in *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), dictates that the tolling rule announced in *Perez* should be applied by New York venued Federal Courts in §1983 cases.

> Federal courts (hearing a §1983 claim) were obligated not only to apply the analogous New York statute of limitations to respondent's federal constitutional claims, but also to apply the New York rule for tolling that statute of limitations. *Id. at 483, 1794, 444.*

The statute of limitations in the Time's Up matter against the individual defendants named in the motion to amend the Alford complaint should be tolled for the 146 days from the May 29, 2007 date of filing of Plaintiffs' Motion For Leave to Amend through October 22, 2007. Thereby, the actual date of limitation in the instant action may be July 22, 2008.

Alternatively, if the court were to deny Plaintiffs' counsel's retroactive request for a four day extension of time to serve the above-referred Individual Defendants in this matter, this court's personal jurisdiction over Defendants' City of New York and NYPD Commissioner Raymond Kelly are not at issue since both of these Defendants were served in the instant action on October 25, 2007. (*Stecklow Exh. B*).[1]  If the instant matter is dismissed as to the individual Defendants at

---

[1] The Plaintiff served three (3) defendants on October 25, 2007 as denoted by the three stamps on the front page of the service complaint attached to the Stecklow Affidavit as Exhibit 1.  Two of the defendants served were Commissioner Ray Kelly and the City of New York, as was confirmed in an email between Counsel on 10/25/07 and included as part of Exh B.  As to the third stamp, Plaintiff's counsel believes that the City accepted service on behalf of Deputy Inspector Thomas Graham on that

3

issue, Plaintiffs would be within their rights to institute a new and separate action against the individual defendants named in the proposed amended complaint in addition to continuing proceedings against the Defendants City of New York and NYPD Commissioner Ray Kelly in this action. As such, the general Federal policy against multiplicative litigation would discourage the dismissal of the individual Defendants in this action.

### B.   Rule 4(M) Operates Not As An Outer Limit Subject To Reduction But As An Irreducible Allowance

The Plaintiff has respectfully requested that this Honorable Court grant an extension of time, 'to bless the service,' concededly perfected four (4) days after the 120 day period for service prescribed by FRCP 4(m), of the following individual Defendants: Lieutenant Carolyn Fanale, who ordered the October 29, 2004 NYPD mobilization that was the proximate cause of the Plaintiffs' injuries, Deputy Inspector Thomas Graham, the ranking officer at said mobilization, Detective Luis Mortimer, who attempted a warrantless entry of Plaintiffs' headquarters and assaulted Plaintiffs' members and guests when denied entry, and Detective Steven Bobbett, who was a participant in the mobilization from which this and the Prior Litigation Arose.

The individual Defendants at issue in the instant motion have had notice of the Plaintiffs' proposal to name them each in a lawsuit since at least May 29, 2007, the day their Counsel received a copy of the Plaintiff's Motion To Amend the complaint in the Alford Litigation. It has been well-settled for over one hundred years that "…facts brought to the knowledge of their [a party's] attorney… are considered in law as brought to their knowledge." *Smith v. Ayer*, 101 U.S. 320, 325 (1879). The Southern District has held this form of constructive notice to be sufficient in §1983 actions where groups of officials are represented by the same attorney. *See Morrison v. Lefevre*, 592 F.Supp. 1052, 1057 (S.D.N.Y. 1984); *citing Florence v. Krasucki,* 533

---

date as well. However, further inquiry to the Corp. Counsel service desk indicates this service would have been effectuated in violation of their normal protocol.

F.Supp. 1047, 1054 (W.D.N.Y.1982) (additional police officer defendants represented by same attorney had sufficient notice of action and would not be unjustly prejudiced in being added as parties to action); *Mitchell v. Hendricks,* 68 F.R.D. 564, 567 (E.D.Pa.1975) (same).

In the Alford Litigation, Mr. Larkin was the attorney of record for all named Defendants and the conduit through which all discovery was conducted. Mr. Larkin concedes in the preliminary statement on page 1 of his "Memorandum Of Law In Support Of Defendant City Of New York's Motion To Dismiss The Complaint" (Hereinafter "Def.Memo1-p.#") that he had notice of Time's Up's claims as well as copies of all pleadings and other documents related to said claims from at least the time of Plaintiffs' Motion to Amend in the Alford Litigation. Counsel specifically noted that none of the allegations asserted by Time's Up had been changed from the proposed amended complaint filed in the Alford Litigation on May 29, 2007 and initially served on Mr. Larkin on April 12, 2007. (Def.Memo1-1). Under the facts now at issue, the defendants were not prejudiced as a result of the four (4) day belated service on the individual defendants in the instant action, as all defendants in this action had constructive notice of this pending action through their counsel for over six months before it was even filed as an independent action[2].

Courts in the Southern District have previously relied upon a determination that defendants had actual notice of the pending claim before service when granting plaintiffs extensions to serve individual defendants past the 120 day period. *Barcher v. New York University School of Law*, 993 F.Supp. 177, 180 (SDNY 1998. In *Barcher*, the Court allowed the late service finding that the:

---

[2]   Additionally, individual Defendants Lt. Fanale and PO's Mortimer and Bobbett had actual notice of Plaintiffs' claims as early as January of 2005, when their memo books were received by CCRB Investigator Sasha Linney, and Deputy Inspector Graham had notice of Plaintiffs' claims as early as January of 2006, when he was interviewed by Investigator Linney. All of these actions were parts of the CCRB investigation into the events underlying Plaintiffs' claims in this action (CCRB Case #200411070).

5

> defendants presumably received actual notice of the lawsuit on or around
> the 120-day period… Even though the arrival date may have, therefore,
> slightly exceeded the 120-day period for service, the overlap is not so
> gross as to justify dismissal. *Barcher* at 180.

Further, in choosing not to dismiss plaintiff's complaint, the Court cited the Supreme Court's holding in *Henderson v. U.S.,* 517 U.S. 654, 661, 116 S.Ct. 1638, 134, L.Ed.2d 880 (1996):

> Examing the Rule in its historical context, the Supreme Court found the
> 120-day period 'operates not as an outer limit subject to reduction, but as
> an irreducible allowance.' *Id.* at 180.

The *Henderson* Supreme Court further stressed that:

> [t]he core function of service is to supply notice of the pendency of a legal
> action, in a manner and at a time that affords the defendant a fair
> opportunity to answer the complaint and present defenses and objections.
> *Henderson at* 672.

Courts in the Southern District have allowed service well past the 120-day service period in the absence of good cause for delay, under the prior FRCP 4(j) as well as that provision's successor amendment, FRCP 4(m). *See, e.g., Baptiste v. Cavendish Club, Inc.*, 670 F.Supp. 108, 109 (SDNY 1987) (Although… [Plaintiff's counsel] has not demonstrated good cause for having failed to serve the complaint within 120 days, the Court declines to dismiss the complaint…. the summons was served only a month late and defendants have suffered no prejudice."). *See also, Rodriguez v. Singer Center*, 2008 WL 2434235, 1 (S.D.N.Y. 2008); *Alvarado v. American Freightways,* 2005 WL 1467893, *6 (S.D.N.Y. 2005); *Buckley v. Doha Bank,* , 2002 WL 1751372, 3 (S.D.N.Y. 2002); *Mejia v. Castle Hotel,* 164 F.R.D. 343, 345-46 , 33 Fed.R.Serv.3d 1369 (S.D.N.Y. 1996).

In this case, the individual defendants at issue had notice of the instant action for at least six months, if not several years, prior to the service perfected four days past the 120 day period prescribed by FRCP 4(m). Plaintiffs' counsel made a speedy, though concededly retroactive, request for the court to bless the belated service within 4 days of same, and Defendants have

6

failed to assert any cognizable prejudice that would arise from this Court blessing the service. The Court should bless the service so that the instant case may be determined on its merits.

C. **Defendants Should Not Be Allowed To Prevail On The Technicalities Of Personal Jurisdiction When They Have Failed To Comply With This Court's Orders To Identify At Least Two "John Doe" Defendants For Over A Year**

Plaintiffs' ability to hale several of the John Doe Defendants into the instant litigation has been hampered by Defendants continued and unexplained failure to comply with the outstanding discovery order to identify several of said "John Doe" Defendants. That order was entered against Defendants in the Prior Litigation on February 13, 2007, in a bench ruling by this Honorable Court. Plaintiffs complied with the discovery orders issued as against Plaintiffs at that conference within a month by serving supplemental responses as ordered on March 9, 2007. Defendants disregarded both this Court's order of February 13, 2007 and Plaintiffs' supplemental discovery request that was served on Defendants pursuant to that court order on March 15, 2007. Moreover, Plaintiff has communicated with the defendants urging them to identify these officers for the Time's Up litigation (Stecklow Exh. C).

As the court explained in *Cine 42nd St. Theatre. v. Allied Artists Pictures*, 602 F.2d 1062, 1066 (2nd Cir. 1979), "sanctions… [under FRCP 37, including but not limited to] [p]reclusionary orders ensure that a party will not be able to profit from its own failure to comply [with discovery orders]."  Specific to the instant action, the Supreme Court has held that defendants who have refused to comply with discovery orders, under FRCP 37(b)(2)(A), may be estopped by District Courts from raising the issue of personal jurisdiction when such "sanction [would] be both 'just' and specifically related to the particular 'claim' that was at issue in the discovery order." *Ins. Corp. of Ireland. v. Comp. d. Bauxites*, 456 U.S. 694, 707 (1982). In that case, the Supreme Court gave its imprimatur to a FRCP 37(b)(2)(A) sanction deeming personal jurisdiction over particular defendants to be established on a record which indicated that the

7

defendant had engaged in repeated delay and refused to comply with court-ordered discovery. *Id.* at 707-08. The Second Circuit has adopted the two-prong approach but has also held that prior warnings were not a condition precedent to a court's applying a FRCP 37(b)(2)(A) sanction to deem personal jurisdiction to be established. *Daval Steel v. M/V Fakredine*, 951 F.2d 1357, 1366 (2nd Cir. 1991). *See also, Morrison v. Lefevre*, 592 F.Supp. 1052 (S.D.N.Y. 1984) (Court allowed late naming of John Doe defendants because the State slowed plaintiff's discovery of the responsible officers' names and withheld 'the evidence needed to know against whom their complaint should have been addressed.' Therefore, even absent a specific mistake, 'the language of Rule 15(c) and the interests of justice strongly support granting plaintiffs' motion.).

An appropriate sanction for the Defendant's 16 month (and counting) delay in identifying two John Doe defendants would be to allow the Plaintiff to proceed against these officers as John Doe defendants in this litigation and any liability that is held against these two John Doe defendants to be borne by the City of New York.[3] This would be *just* in ensuring the Plaintiff has the ability to proceed in its lawsuit and to prove its *Monell* claim against the City, while also being *specifically related* to the Court's discovery order of February 14, 2007 that the defendant has continued to violate. This would also be in line with the Second Circuit's theory of a democratic government's obligation to seek justice for its citizenry:

> One might think that the duty of a government in a democracy is to seek the truth, to simplify the litigation process, and to reach a fair, open and honest determination on the merits whenever the conduct of one of its officers is claimed to have infringed the constitutional rights of one of its citizens." *Mercy v. Suffolk Co. N*, 748 F.2d 52, 55 (2nd Cir. 1984).

In light of both the law and the equities in the instant action, Plaintiffs respectfully urge this Court to allow this case to proceed on its merits and not to

---

[3] The third John Doe photograph was identified as proposed defendant Luis Mortimer.

8

allow a four (4) day late service to potentially become the root of a dismissal and the ultimate prejudice suffered by the plaintiff.

### D. Even If This Court Dismisses Against All Of The Other Individual Defendants, The Plaintiff Can Proceed Against The City Of New York And Commissioner Kelly

The pleadings in this action as to Defendants City of New York and Commissioner Raymond Kelly are sufficiently particular and fact-buttressed to survive a motion for dismissal under FRCP 12(b)(6). "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2nd Cir. 1994).

Defendants assert in their ReplyMemo-8, that the Plaintiffs' allegations in this case do not meet either the "formal" policy requirement of *Monell v. Dept. of Social Services,* 436 U.S. 658, 690 (1978) or the specific action or decision standard in *Pembauer v. Cincinnati,* 475 U.S. 469 (1986). Plaintiffs argue that the standards noted in the defense Memo fail to set forth a complete overview of the various manners in which a municipality may be held liable for violation of a plaintiff's civil rights under *Monell*.

In *City of St. Louis v. Praprotnik*, the United States Supreme Court held that "when…. authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." 485 U.S. 112, 127 (1988). Relying on *Praprotnik*, the court held that the record of executive inaction in *White-Ruiz v. City of New York* established "an unwritten Department policy [authorizing retaliatory conduct by individual officers], consistent with these [*Praprotnik*] parameters, that sanctioned a "custom or usage" by lower level officials and officers." 983 F.Supp. 365, 391 (SDNY 1997). In the context of this case, there can be no question that Defendant Commissioner Kelly is an "authorized policymaker" within the meaning of *Praprotnik*, and the instant pleadings are

9

sufficient to impute liability on the Defendant City of New York by way of Defendant Commissioner Kelly's actions and statements prior to the events giving rise to this litigation as well as his inaction in curbing the unconstitutionally free-speech chilling retaliatory conduct of the NYPD against Plaintiffs Time's Up on the night in question.

In the complaint in this case and contrary to the erroneous reading of said pleading in the Reply Memo at page 8, Plaintiffs have advanced detailed allegations of the development, adoption and civil rights-violative effects of the NYPD's unwritten policy of retaliation for Time's Up's exercise of free speech and expressive association, actionable as against the municipality under *Praprotnik*, 485 U.S. at 127.  To wit, the alleged shift in NYPD policy, Defendant Commissioner Kelly's involvement in same and the adverse effects suffered by the Plaintiffs as a result of that shift are alleged in detail in the following paragraphs of the Complaint in this action:

- ¶32 through ¶37 (NYPD policy towards Critical Mass changed because of Critical Mass' protest actions during the 2004 Republican National Convention, NYPD mistaken belief that Plaintiffs Time's Up organized the Critical Mass rides);

- ¶39 through ¶42 (immediate effects of August 2004 NYPD policy change);

- ¶45 through ¶79 (NYPD actions against Critical Mass riders subsequent to 2004);

- ¶95 through ¶99 (NYPD attempted warrantless entry of Time's Up Halloween Party);

- ¶102 through ¶112 (disproportionate NYPD response to Time's Up's refusal to waive Halloween party entry fee for undercover NYPD operative (Defendant Luis Mortimer), a list of the almost one dozen City vehicles that responded to the Level 1 Mobilization, along with almost fifty (50) officers, all of which crowded and closed Houston Street) ;

- ¶116 and ¶117 (NYPD officers were refused entry to Plaintiffs' headquarters and were unable to obtain a warrant or authority from NYPD counsel to search same, NYPD officers surrounded the Plaintiffs' headquarters for over an hour thereafter);

- ¶120 through ¶128 (punitive arrests of Time's Up Halloween Party attendees attempting to depart from said party in compliance with NYPD directions);

- ¶161 through ¶168 (Time's Up members and their guests witnessed arrests of individuals attempting to leave the Time's Up headquarters, Time's Up members and guests feared arrest until Norman Siegel and NYPD negotiated terms of their departure);

- ¶170 through ¶178 (immediately following their failure to enter Plaintiffs' headquarters, NYPD officers use chainsaws to cut bike locks in view of Plaintiffs' members and in direct contravention of then-recently-issued court order detailed in paragraph 76 of complaint); and

- ¶179 through ¶182 (NYPD subsequently attempts to enjoin Critical Mass rides by suing Time's Up, court rules Critical Mass is First Amendment protected expressive association.)

Contrary to the assertions in the Reply Memo at pages 7-8, the above-referred paragraphs of the complaint make a series of narrative, non-conclusory allegations that facially satisfy the Second Circuit's test for First Amendment retaliation claims, as distinguished from the test for prisoner's First Amendment retaliation claims that was incorrectly invoked by Defendants. *Compare Gill v. Pidylpchak*, 389 F.Supp.3d 379, 380 (2d Cir. 2004) [prisoner's claim test] and *White-Ruiz v. City of New York,* 983 F.Supp. 365, 382, citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996); *Ezekwo v. NYCHHC.,* 940 F.2d 775, 780-81 (2d Cir. 1991), *cert. denied,* 502 U.S. 1013 (1991).

In the Alford Litigation, Plaintiffs introduced documentary evidence of the NYPD's erroneous belief that Time's Up sponsors and organizes the Critical Mass bicycle rides in Exhibit D of [their] Attorney['s] Affirmation In Support of Plaintiff's Motion for Leave To Amend The Complaint ("Affirmation"). *See* the documents from Affirmation Exhibit D numbered "000102627" ("Current intelligence indicates that TIMES UP [sic]… will sponsor a "Critical Mass" protest action…."); "00102904" ("'Times Up' [sic] To Hold Critical Mass Bike Ride Today") and "000102946" ("'Times Up' [sic] Holds Massive Critical Mass Bike Ride…. 284 arrests made") (See Stecklow Exh. D).

These NYPD intelligence reports strongly support plaintiffs' contentions in the pleadings when read in conjunction with Commissioner Kelly's declaration in the New York Daily News under the headline "Extremists have hijacked the [Critical Mass] bike rides[.]"(See Stecklow

Exh. D). From the evidence so discovered, it is not a conclusion, but a highly probable inference that at the time the cause of action accrued, the individual NYPD defendants had reason to believe that the NYPD had informally adopted and NYPD Commissioner Kelly had personally sanctioned, through action or inaction, an unwritten policy authorizing NYPD officers to individually and collectively engage in illegal harassment and intimidation of Plaintiffs Time's Up and its members as so-called "extremists" under color of law.

In accord with the United State Supreme Court's holding in *City of St. Louis v. Praprotnik*, 485 U.S. at 127, as adopted and applied to First Amendment retaliation claims by this court in *White-Ruiz v. City of New York*, 983 F.Supp. at 391, Plaintiffs have alleged facts sufficient to support Defendants City of New York and Police Commissioner Kelly's liability to Plaintiffs Time's Up, even absent other individual defendants to this action.

## CONCLUSION

It is within the Court's discretion to bless the service of the individual defendants in this action, and the weight of authority as well as Federal policy and the equities in this matter strongly indicate that such action is warranted. However, was the Court to dismiss the individual Defendants at issue, the instant action would remain viable and the Plaintiffs may re-file as to the individual Defendants. Defendants have failed to assert any cognizable prejudice that would accrue from retroactively granting the extension of time to serve, and Plaintiffs have shown that they are capable of prevailing on their claims even in the absence of the individual Defendants belatedly served while haling those Defendants into a new action.   For all of these reasons, and in the interests of justice, the court should bless the service of the Defendants at issue and allow this matter to proceed to a single disposition on its merits without further delay.

Dated:    June 30, 2008
          New York, New York

                                        _____
                                        Wylie M. Stecklow, Esq. (WS 6012)

        WylieLAW Attorney for Plaintiffs
        10 Spring – N Y C 10012
        (212) 566-8000

To: Michael A. Cardozo
Corporation Counsel of the
City of New York
Attorney for Defendants
100 Church Street, Room 3-216
New York, New York 10007
    Attn: Arthur Larkin, Esq.

**Certificate of Service**

I hereby certify that on Monday, June 30, 2008, I served a true copy of this Sur-Reply Brief, Attorney Declaration and attached Exhibits by submitting VIA ECF, and thereby serving all Defendants.

        /s/ Wylie M. Stecklow